IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WEST RUN STUDENT HOUSING ASSOCIATES, LLC; CAMPUS VIEW JMU, LLC; and MT. TABOR VILLAGE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>HUNTINGTON NATIONAL BANK,<br><br>Defendant. | 2:12-cv-76 |

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court is a MOTION TO STRIKE PORTIONS OF AMENDED COMPLAINT (ECF No. 22) filed by Defendant Huntington National Bank ("Huntington") with brief in support (ECF No. 23). Plaintiffs Campus View JMU, LLC, and Mt. Tabor Village, LLC filed a brief in opposition (ECF No. 26);[1] Huntington filed a reply brief (ECF No. 27). Accordingly, the motion is ripe for disputation.

### I. Background

The parties, counsel, and the Court are familiar with the background of this case and, therefore, the Court will not recite the facts at length. The following is a brief recitation of the procedural history relevant to the issues presently before the Court.

Plaintiffs initiated this lawsuit on or about December 22, 2011 by filing a three-count Verified Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania. At Count One, Plaintiff West Run alleged that Huntington breached its duty of good faith and fair

---

1. All parties retain West Run Student Housing Associates, LLC ("West Run) as a named Plaintiff in the caption and treat it as a moving party. As discussed in greater detail below, the United States Court of Appeals for the Third Circuit upheld the dismissal of both counts brought by West Run against Huntington in the Amended Complaint. Therefore, in the absence of any other pleadings filed of record, West Run is no longer a party to this action and the caption will be amended accordingly.

dealing by participating in the financing of a nearby student housing construction project which caused the failure of the West Run project. At Counts Two and Three, both Campus View and Mt. Tabor Village each alleged breach of contract based on Huntington's failure to honor certain construction draws under the respective construction loan agreements.

Huntington removed the lawsuit to this Court on January 20, 2012 and filed a Motion to Dismiss all claims one week later. Huntington argued that West Run's claims should be dismissed for failure to state a plausible claim and that the claims of Campus View and Mt. Tabor Village should be dismissed on the basis that their own admissions established that they had not fulfilled certain unit pre-sale(s) requirements, which relieved Huntington from any further funding obligations.[2]

Plaintiffs did not contest Huntington's motion to dismiss, but instead filed an Amended Complaint on February 28, 2012. The Amended Complaint omitted factual allegations contained in the original Complaint regarding the failure of Campus View and Mt. Tabor Village to fulfill their unit pre-sale(s) requirements and included a new count ("Count One") in which West Run averred that Huntington had breached its duty of good faith and fair dealing in allegedly having disclosed confidential information to other developers. The Amended Complaint also renumbered the original three counts as Counts Two, Three, and Four.

Huntington filed a Motion to Dismiss the Amended Complaint on March 16, 2012. Once again, Huntington argued that West Run's pleadings contained insufficient factual support to state a plausible claim. As to the claims of Campus View and Mt. Tabor Village, Huntington argued that those claims should have been dismissed based on "their own admissions as to the pre-sale(s) deficiencies" contained in the original Complaint.

---

2. The original Complaint averred that Campus View had pre-sold thirty-six units and Mt. Tabor pre-sold twenty-seven units. The loan agreements, however, required Mt. Tabor to sell twenty-nine units and Campus View to sell at least fifty-four units before Huntington was required to fund the entire projects.

Plaintiffs responded that West Run's claims as pled met the plausibility standard and that Defendant's request to dismiss the claims of Campus View and Mt. Tabor Village "based on allegations found in the original complaint, which are absent from the amended complaint, is untenable."

This Court granted Huntington's motion on May 15, 2012 and dismissed the Amended Complaint in its entirety with prejudice. To summarize, the Court found (1) that little more than unsupported conclusions and unwarranted inferences were pled in support of Count One; (2) that the absence of restrictive language in the lending agreement between the parties was fatal to Count Two; and (3) that the inclusion of the pre-sale(s) references in the verified original Complaint were binding judicial omissions and the deletion of those figures at Counts Three and Four in the Amended Complaint was simply an attempt to avoid dismissal. Plaintiffs' appeal followed.

The United States Court of Appeals for the Third Circuit affirmed in part and reversed in part in a precedential opinion issued on April 4, 2013. *See W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165 (3d Cir. 2013). The court of appeals first agreed with this Court's determination that West Run "alleged insufficient facts to support the conclusion that Huntington provided any proprietary information regarding the West Run Project to the [competing] developers." *Id.* at 169. The court of appeals similarly upheld this Court's dismissal of Count Two, concluding that "the implied duty of good faith and fair dealing did not extend as far as Plaintiffs suggest." *Id.* at 170. The court of appeals did, however, hold that this Court erred in dismissing Counts Three and Four "given the procedural posture of the case." *Id.* at 171. As the court of appeals explained, Plaintiffs could not be bound to the allegations in the superseded Complaint because they were permitted to amend their original pleading to cure a

purported factual mistake, to withdraw judicial admissions that were previously made, and to correct inadequacies in response to a motion to dismiss. *See id.* at 171-73. Accordingly, the court of appeals vacated and remanded with respect to Counts Three and Four so that this Court "[could] give Plaintiffs a chance to provide evidence showing that the pre-sale numbers in the original complaint were incorrect (as they now claim) and that the real numbers meet the contractual requirements." *Id.* at 173; *see also id.* at n.4.

Shortly after the mandate of the court of appeals was docketed, Huntington filed its Answer to Counts Three and Four and a Motion to Strike portions of the Amended Complaint. Defendants partially oppose the motion to strike to which the Court now turns.

## II.     Standard of Review

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, 284 F.R.D. 238, 243-44 (E.D. Pa. 2012) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393 (E.D. Pa. 2002)). Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.* at 243 (citation and quotation marks omitted). (citations omitted).

## III.    Discussion

Huntington moves the Court to strike Plaintiffs' jury trial demand, their claim for consequential damages, punitive damages, and attorneys' fees, and all allegations regarding West Run. The Court will address said requests seriatim.

A. <u>Jury Trial Demand</u>

Huntington submits that the Court should strike Plaintiff's jury trial demand because they knowingly and voluntarily waived that right in the loan documents they now claim Defendant breached. *See* ECF No. 23-2 (Campus View contract); ECF No. 23-1 (Mt. Tabor contract). Not surprisingly, Defendants oppose this request.

The right to a jury trial in a civil case is a fundamental right and courts indulge every reasonable presumption against waiver. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292 (3d Cir. 2004); *Collins v. Gov't of Virgin Islands*, 366 F.2d 279 (3d Cir. 1966)). Nonetheless, as with other constitutional rights, private litigants may waive the right to a jury trial in a civil case. *Id.* (citations omitted).

"To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case." *Id.* (citations omitted). *See also Triboro, Inc. v. Siren, Inc.*, CIV.05 997 WHW, 2006 WL 2990365, at *6 (D.N.J. Oct. 18, 2006) ("The validity of jury waivers in diversity cases is governed by federal law.") (citing *Simler v. Connor*, 372 U.S. 221, 222 (1963)). A contractual waiver is knowing and voluntary when the facts show that (1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous. *First Union National Bank v. United States of America*, 164 F.Supp.2d 660, 663 (E.D. Pa. 2001). The burden of proving a knowingly and voluntarily waiver falls on the party seeking enforcement of the contractual clause. *Henricks Commerce Park, LLC v. Main Steel Polishing Co., Inc.*, CIV A 09-23, 2009 WL 2524348, at *3 (W.D. Pa. Aug. 18, 2009); *see also*

5

*Bishop v. GNC Franchising, LLC.,* 05CV0827, 2006 WL 2266251, at *1 (W.D. Pa. Jan. 13, 2006) (discussing the burden of proving a waiver of the right to a jury trial).

Here, the parties dispute the applicability of the initial three factors. Huntington focuses its attention on the first factor, submitting that Plaintiffs' statements regarding the gross disparity in bargaining power are self-serving, ungrounded in factual support, and contradicted by their own allegations. To support its position, Huntington contends that "[c]ourts have stricken jury demands in similar cases." ECF No. 27 at 2-3 (citing *Weed v. Ally Fin. Inc.*, CIV.A. 11-2808, 2011 WL 4482118 (E.D. Pa. Sept. 27, 2011); *Bishop,* 2006 WL 2266251). Turning to the second and third factors, Huntington pivots away from that theory and asks the Court to accept other allegations as true when they conveniently support its position. *See* ECF No. 27 at 3 ("Plaintiffs allegations establish that they were operated by sophisticated sponsors . . . [and] also establish that at least some portion of the agreements was negotiated."); *see also id.* at 3 n.2 (indicating that the Plaintiffs were operated by sophisticated sponsors because "Russell, P. Mills, the sponsor that verified the Amended Complaint, is an attorney that concentrates his practice, in part, on real property transactions) (citing Russell P. Mills Attorney Profile, MILLS & HENRY ATTORNEYS AT LAW, http://millshenry.com/rpm.html (last visited July 22, 2013). Defendants generally argue that Huntington, as the party seeking enforcement of the clause, has not and cannot satisfy its burden of proof because the uncontroverted factual averments in the Amended Complaint set forth allegations that run afoul of the first three factors. Thus, as Defendants somehow conclude, the waivers are therefore ineffective.

At this juncture, the Court is unable to meaningfully analyze the disputed factors given the dearth of evidence on either side of this issue. The only background information properly before the Court regarding the relative bargaining power between the parties, the sophistication

of the business entities, or the extent to which the parties negotiated the terms are the unadorned assertions in the Amended Complaint that unsurprisingly tend to favor the position now advanced by Plaintiffs. When those conclusory averments are set aside, the facts indicate that Plaintiffs were competent entities that freely chose a lender to finance their multimillion dollar projects from among numerous competitors, engaged in some negotiations, and agreed to certain terms expressly set forth in the contracts, including the jury trial waiver.

Should the discovery process confirm these suspicions, the Court may indeed revisit this issue. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 226-27 (3d Cir. 2007) (""Since a court has the power to act sua sponte at any time under Rule 39, it follows that a court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial.") (citation and quotation marks omitted). The Court will not, however, rely upon a disfavored procedural mechanism to strike a fundamental and constitutionally protected right at this early stage of the proceeding without proper factual support from Huntigton.[3] Therefore, the Court will deny the motion strike the jury demand without prejudice.

B. <u>Prayer for Punitive Damages & Attorneys' Fees</u>

Huntington also moves the Court to strike Plaintiffs' prayer for punitive damages and attorneys' fees. Plaintiffs do not oppose these requests. Accordingly, the Court will strike all references to punitive damages and attorneys' fees from the ad damnum clauses in the Amended Complaint.

---

3. Huntington's citation to *Weed* and *Bishop* may be instructive. In *Weed*, the court found that no gross disparity existed based upon evidence of plaintiffs' eighty-two year track record of successful business dealings with the defendant. 2011 WL 4482118, at *5. In *Bishop*, the court noted the educational and professional background of the plaintiffs based upon record evidence. Although Huntington attempts to satisfy the "sophistication" prong by noting the background of one sponsor (*i.e.*, Mills) and citing to his law firm's website, the Court gives minimal weight to that extraneous material as presented.

7

C. Prayer for Consequential Damages

Huntington asks the Court to strike Plaintiffs' prayer for consequential damages because Plaintiffs purportedly disclaimed their ability to recover such damages in the operative loan documents. Plaintiffs again highlight their perceived inferior bargaining power, arguing that the inequalities among the parties should void the contractual waiver.

Pennsylvania law permits parties of equal bargaining power to contractually limit their liability for consequential damages. *See Philips-Van Heusen Corp. v. Mitsui O.S.K. Lines Ltd.*, CIV.A. 1:CV-00-0665, 2002 WL 32348263, at *13 (M.D. Pa. Aug. 14, 2002) (citations omitted). "Such limitations on liability will be enforced absent a showing that the breaching party engaged in willful or wanton conduct." *Id.* (citation omitted).

Much like the earlier waiver issue, the Court finds that it is premature at this early juncture to dismiss Plaintiffs' claim for consequential damages without discovery having occurred. Discovery may certainly reveal that the limitation is enforceable, and Huntington may undoubtedly raise this issue again at the summary judgment stage of this case. Therefore, the Court will dismiss this request without prejudice.

D. Allegations Relating to the Dismissal of West Run

Huntington asks the Court to strike all allegations supporting or relating to the two now-dismissed counts brought by West Run because they are no longer material to this litigation. *See* ECF No. 27 at 4-5 (listing the paragraphs it moves the Court to strike). Plaintiffs oppose this request and submit that some of those allegations have an impact on the remaining controversy. *See, e.g.*, ECF No. 26 at 5 ("Coupled with the allegations of paragraphs 42 and 51, that there was overlap among the sponsors of the three projects, [Paragraph 25] is relevant to show that the sponsors were competent and unlikely to cause loan defaults."). The Court does not agree.

The Amended Complaint sets forth a significant number of allegations that relate to West Run and the two now-dismissed counts brought on its behalf—averments that only unnecessarily confuse the two remaining issues and lengthen the pleading. Excising those paragraphs in whole or in part that reference West Run Student Housing, LLC or the West Run Student Housing Project would effectuate the purpose of Rule 12(f) by streamlining this litigation and avoiding unnecessary forays into immaterial matters. *See* ECF No. 10 at "Introduction"; ¶¶ 1, 5-41, 42-44, 46, 59, 67, 68, 72-73, 81-82, 84, 90-91. Similarly, amending those references that group the three projects together would also surely "clean up" the pleadings. *See* ECF No. 10 at ¶¶ 55, 57, 58.[4]

Accordingly, the Court will grant the motion to strike all references to West Run Student Housing Associates, LLC and all allegations concerning the West Run Student Housing Project in Morgantown, West Virginia. Plaintiffs will be directed to file a Second Amended Complaint consistent with this Memorandum Opinion.

### IV.     Conclusion

For the reasons hereinabove stated, the Court will grant in part and deny in part the MOTION TO STRIKE PORTIONS OF AMENDED COMPLAINT. An appropriate Order follows.

McVerry, J.

---

4. The Court also notes the observation of the court of appeals regarding "James Mason University" and the likelihood that James Madison University should be the institution referenced. *See W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 167 n.1 (3d Cir. 2013).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WEST RUN STUDENT HOUSING ASSOCIATES, LLC; CAMPUS VIEW JMU, LLC; and MT. TABOR VILLAGE, LLC**<br><br>Plaintiffs,<br><br>v.<br><br>**HUNTINGTON NATIONAL BANK,**<br><br>Defendant. | 2:12-cv-76 |

## ORDER OF COURT

AND NOW, this 5th day of August, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO STRIKE PORTIONS OF AMENDED COMPLAINT (ECF No. 22) filed by Defendant Huntington National Bank is **GRANTED IN PART** and **DENIED IN PART** as follows: (1) the Motion to Strike the jury trial demand is **DENIED WITHOUT PREJUDICE**; (2) the Motion to Strike the prayer for punitive damages and attorneys' fees is **GRANTED** and same are **STRICKEN**; (3) the Motion to Strike the prayer for consequential damages is **DENIED WITHOUT PREJUDICE**; and (4) the Motion to Strike all references to West Run Student Housing Associates, LLC and all allegations concerning the West Run Student Housing Project in Morgantown, West Virginia is **GRANTED** and the same are **STRICKEN**.

The caption is amended to hereafter read as follows:

| | ) | |
|---|---|---|
| **CAMPUS VIEW JMU, LLC; and MT. TABOR VILLAGE, LLC** | ) ) ) | |
| Plaintiffs, | ) ) | 2:12-cv-76 |
| v. | ) ) ) | |
| **HUNTINGTON NATIONAL BANK,** | ) ) ) | |
| Defendant. | ) ) ) | |

**IT IS FURTHER ORDERED** that Plaintiffs shall file a Second Amended Complaint on or before August 19, 2013 consistent with the foregoing Memorandum Opinion and this Order of Court.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Robert O. Lampl**
Email: rol@lampllaw.com

**Peter S. Russ**
Email: peter.russ@bipc.com
**Kathleen J. Goldman**
Email: kathleen.goldman@bipc.com
**Renee M. Schwerdt**
Email: renee.schwerdt@bipc.com